# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

ANDREW DARTELLE DURGIN,                )
                                        )
        Plaintiff                   )
                                        )
v.                                      )    No. 2:17-cv-00241-DBH
                                        )
NANCY A. BERRYHILL,                     )
Acting Commissioner of Social Security, )
                                        )
        Defendant                   )

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in evaluating treating and examining source opinions and in assessing his credibility. *See* Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Statement of Errors") (ECF No. 10) at 2-6. I find no error, and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2012, Finding 1, Record at 26; that he had severe impairments of a

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

history of bilateral calcaneal fractures with subtalar arthritis, bipolar disorder, anxiety disorder, and a personality disorder, Finding 3, *id.*; that he had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that, *inter alia*, he needed to avoid tasks involving a variety of instructions or tasks, was able to understand and carry out simple one- or two-step instructions and detailed but uninvolved written or oral instructions involving a few concrete variables in or from standardized situations, could have no contact with the public and occasional contact with coworkers, needed a well-spaced work environment but could work in view of others, could engage in no teamwork or work involving collaboration with others, needed minimal changes in work settings and routines, and could make judgments only on simple work-related decisions, Finding 5, *id.* at 29; that, considering his age (33 years old, defined as a younger individual, on his alleged disability onset date, July 27, 2011), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 37; and that he, therefore, had not been disabled from July 27, 2011, through the date of the decision, February 3, 2016, Finding 11, *id.* at 38. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

    The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support

the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. The ALJ's Evaluation of the Opinion Evidence

The plaintiff first alleges that the ALJ erred in her consideration of the opinion evidence of record. *See* Statement of Errors at 2-4. The ALJ gave "great weight" to the opinions of two agency nonexamining consultants, Lewis F. Lester, Ph.D., and Brian Stahl, Ph.D., and "some weight" to the opinions of agency examining consultant James F. Whelan, Jr., Psy.D. Record at 35. She gave "very little weight" to the opinions of the plaintiff's treating psychiatrist, Reinaldo de los Heros, M.D. *Id*. at 36. I find no error.

### 1. Dr. Whelan's Opinions

Dr. Whelan examined the plaintiff on June 13, 2013, diagnosing him with bipolar disorder, not otherwise specified, panic disorder with agoraphobia, obsessive compulsive disorder, attention deficit hyperactivity disorder ("ADHD"), and alcohol dependence in sustained full remission, and assessing a Global Assessment of Functioning ("GAF") score of 45. *See* Record at 485, 491.[2]

---

[2] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000) ("DSM-IV-TR"). The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social,

3

Dr. Whelan concluded, in the section of his report titled "Medical Source Statement":

> [The plaintiff] presents with serious psychological limitation in terms of his ability to do work related activity. . . . He has the apparent cognitive ability to be able to do work that is at least simple and repetitive in nature. Even with such work bipolar disorder, anxiety, attentional issues might singly or in some combination restrict his ability to take in information he could otherwise understand. He displayed adequate long-term memory and immediate recall during the course of the evaluation. He lost track of information in short-term memory but was stimulable to recover it. He speaks of lifelong problems with concentration. He said he experiences some help with the [medication] Vyvanse. [ADHD] would certainly contribute to attentional problems. He describes some skills at persistence. He apparently would rather keep working at something than have to ask for help though he could ask for help at work. He said his attendance at work was poor and he was frequently tardy. He describes limited but acceptable social interaction in work situations. He would rather work than interact with people. Anxiety may contribute to that. He describes limited ability to adapt to change at work. Bipolar disorder may resist the demand to adapt. The demand to adapt to change may increase his level of anxiety. Bipolar disorder, anxiety, attentional issues may singly or in some combination restrict his ability to take in information to help him to adapt. Serious psychological limitation in terms of his ability to do work related activity caused by bipolar disorder, anxiety, attentional issues appears to best describe [the plaintiff] at this point.

*Id*. at 492.

The ALJ stated that she found Dr. Whelan's opinions "generally consistent with the medical evidence of record as well as his mental status examination." *Id*. at 35 (citation omitted). She elaborated:

> His opinion[] that the [plaintiff] has the apparent cognitive ability to do work that is at least simple and repetitive in nature is consistent with the [plaintiff]'s generally benign mental status examination by Dr. Whelan, as well as his level of activities . . . . His description of the [plaintiff]'s preference for working independently, but

---

and occupational functioning." *Id.* The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 34. A GAF score of 41 to 50 represents "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* (boldface omitted). In 2013, the DSM-IV-TR was superseded by the American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* (5th ed. 2013) ("DSM-V"), which jettisoned the use of GAF scores. *See* DSM-V at 16 ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."). Nonetheless, I assess the supportability of the ALJ's decision based on the evidence available to her at that time.

4

> with some ability to ask for help at work, has been taken into account in the [plaintiff]'s RFC precluding contact with the general public and limiting his interactions with coworkers and supervisors. However, although Dr. Whelan's descriptions are useful in evaluating the [plaintiff]'s strengths and limitations regarding his performance of work-related tasks, Dr. Whelan does not provide a specific function-by-function analysis, and it is not entirely clear whether the [plaintiff]'s RFC contains any provisions that might be considered inconsistent with his Medical Source Statement.

*Id*. at 35-36 (citations omitted).

The plaintiff disputes that it is unclear whether the Whelan report comports with the mental RFC found by the ALJ, asserting, "On the contrary, Dr. Whelan's statements and GAF assessment support disability, and go well beyond the [ALJ's] RFC." Statement of Errors at 3. He asserts that, although Dr. Whelan noted attendance problems that a vocational expert testified would preclude employment, the ALJ simply omitted that limitation without explanation. *See id*. at 3-4. He argues that, while Dr. Whelan indicated that this limitation was reported by the plaintiff, he effectively endorsed it by including it in his "Medical Source Statement" and finding serious psychological limitations in the plaintiff's ability to work. *Id*. at 3 n.1.

The commissioner rejoins that the ALJ supportably (i) deemed Dr. Whelan's opinion that the plaintiff could do simple, repetitive work consistent with generally benign mental status examinations and the plaintiff's activities of daily living, (ii) elected to make allowance for the plaintiff's preference to work alone, and (iii) concluded that, in the absence of a function-by-function analysis, it was unclear whether Dr. Whelan's Medical Source Statement was inconsistent with the mental RFC she had assessed. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") at 2-3. She adds that neither the plaintiff's self-reported attendance limitation nor Dr. Whelan's GAF score necessarily reflects disability because neither constitutes an opinion as to occupational functional limitations. *See id*. at 3-4. She argues, in the alternative,

that any error in characterizing the Whelan report is harmless because the ALJ relied on the opinions of Drs. Lester and Stahl, both of whom took that report into consideration. *See id*. at 4.

At oral argument, the plaintiff's counsel countered that the commissioner's reliance on the Lester and Stahl opinions to argue harmless error was misplaced because, whereas the ALJ characterized the Whelan opinions as generally consistent with the medical evidence, Drs. Lester and Stahl essentially rejected them as the product of the plaintiff's representations and self-report. *See* Record at 175, 179, 203, 207.

I agree with the commissioner that the plaintiff fails to undermine the ALJ's analysis. *See* Opposition at 3. As a threshold matter, the ALJ was not required to provide good reasons for the weight given to the opinions of Dr. Whelan, a one-time examining consultant. *See, e.g., Bowie v. Colvin*, No. 2:12-cv-205-DBH, 2013 WL 1912913, at *7 (D. Me. Mar. 31, 2013) (rec. dec., *aff'd* May 7, 2013) ("A onetime examining consultant is not a 'treating source' and therefore is not subject to the 'treating source' rule, pursuant to which a medical opinion may be rejected only for good reasons.") (citation and internal quotation marks omitted). Nevertheless, the ALJ did so.

Despite her general statement that Dr. Whelan's opinions were "generally consistent with the medical evidence of record[,]" the ALJ made clear that she give those opinions only "some weight," to the extent that she (i) credited Dr. Whelan's finding that the plaintiff had "the apparent cognitive ability to do work that is at least simple and repetitive in nature[,]" which she deemed consistent with his own generally benign findings on mental status examination as well as the plaintiff's activities of daily living, and (ii) took into account Dr. Whelan's observation that the plaintiff preferred working independently. Record at 35-36. She explained that, in the absence of a function-by-function analysis by Dr. Whelan, it was not clear whether his Medical Source Statement was otherwise inconsistent with her mental RFC determination. *See id*. at 36.

6

The plaintiff falls short of making a persuasive case that the ALJ erred in failing to recognize that Dr. Whelan's assessment was considerably more restrictive than her own. *See* Statement of Errors at 3-4. A GAF score of 45 is not necessarily indicative of an inability to work. *See, e.g., LeBlanc v. Colvin*, No. 2:13-cv-348-JDL, 2014 WL 5431567, at *4 (D. Me. Oct. 24, 2014) ("A GAF score, standing alone, does not necessarily indicate an inability to work or to perform specific work-related functions.") (citation and internal quotation marks omitted). And, Dr. Whelan's mere placement in his Medical Source Statement of the plaintiff's report that "his attendance at work was poor and he was frequently tardy[,]" Record at 492, did not transform it into a medical opinion, *see, e.g.*, *Hesson v. Colvin*, No. 2:15-cv-106-DBH, 2015 WL 7259747, at *4 (D. Me. Sept. 29, 2015) (rec. dec., *aff'd* Nov. 16, 2015) (portions of examination reports that "reflect the plaintiff's subjective complaints are not 'medical opinions,' that is, statements that reflect *judgments* about the nature and severity of your impairment(s)") (citation, footnote, and internal punctuation omitted) (emphasis in original).

Finally, portions of the Medical Source Statement that appear to reflect Dr. Whelan's views rather than the plaintiff's self-reports contain vague language, for example, that bipolar disorder, anxiety, and attentional issues "might" restrict the plaintiff's ability to take in information and that "[b]ipolar disorder may resist the demand to adapt." Record at 492. The ALJ reasonably deemed it difficult to ascertain the extent to which such findings clashed with her own.[3]

---

[3] Although I find no error in the ALJ's treatment of the Whelan report, I agree with the commissioner, *see* Opposition at 4, that any error is harmless given her reliance on the Lester and Stahl opinions. While Drs. Lester and Stahl do appear to have accorded little, if any, weight, to the Whelan report, *see* Record at 175, 179, 203, 207, I perceive no clash in the ALJ's assignment of "great weight" to their opinions and "some weight" to those of Dr. Whelan. *Id*. at 35. To the extent that the ALJ adopted Dr. Whelan's opinion that the plaintiff had the cognitive ability to do work that was at least simple and repetitive in nature, *see id*., that finding was consistent with those of Drs. Lester and Stahl, *see id*. at 177, 205. To the extent that she accommodated the plaintiff's preference to work independently, she explained that she had chosen to add that restriction to those set forth by Drs. Lester and Stahl. *See id*. at 35. Her assessment is otherwise consistent with those of Drs. Lester and Stahl, in that she adopted no further functional limitations based on the Whelan report. *See id*. These circumstances materially distinguish this case from *Picard v.*

Remand on this basis, accordingly, is unwarranted.

## 2. Dr. de los Heros's Opinions

At the behest of the commissioner, Dr. de los Heros completed a Report of Individual with Mental Impairment dated March 31, 2014. *See id*. at 584. He described the plaintiff as suffering from poor concentration, anxiety, irritability, a short attention span, anger, agitation, ideas of reference, and paranoia. *See id*. He indicated that the plaintiff had difficulties remembering or carrying out instructions regularly and described his prognosis as "guarded at best, no further improvement expected; hopefully treatment will help prevent further deterioration of cognition[,] mood[, and] anxiety[.]" *Id*. at 585.

The ALJ gave "very little weight" to Dr. de los Heros's opinions, explaining that, although he was the plaintiff's treating psychiatrist and had treated him "biweekly for at least 3 years":

> [M]any of his conclusions about the [plaintiff]'s mental status . . . are not consistent with his treating records overall, which demonstrate a higher level of mental functioning overall . . . . His Medical Source Statement also does not reflect the [plaintiff]'s significant improvement with medication management, and Dr. de los Heros's statement that the [plaintiff]'s prognosis is "guarded at best" is at odds with the [plaintiff]'s noted periods of remission as well as Dr. de los Heros's countless assessments that the [plaintiff] has been improving. Finally, although Dr. de los Heros describes that the [plaintiff] has difficulties with remembering and carrying out instructions, he does not specify the extent of these difficulties, or whether they would preclude the [plaintiff] from performing simple, unskilled work consistent with his RFC.

*Id*. at 36 (citations omitted).

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in

---

*Berryhill*, No. 2:16-cv-00636-JHR, 2018 WL 1370681 (D. Me. Mar. 16, 2018), in which this court held remand warranted by an ALJ's failure to recognize a material conflict between the opinions of an agency examining consultant and an agency nonexamining consultant, both of which she purported to give great weight. *See Picard*, 2018 WL 1370681, at *3-4.

[the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See id.* §§ 404.1527(c), 416.927(c).[4] An ALJ may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for doing so. *See, e.g., id.* §§ 404.1527(c)(2), 416.927(c)(2) ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] a [claimant's] treating source's medical opinion."); Social Security Ruling 96-8p ("SSR 96-8p"), reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 149 (an ALJ can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted"). An ALJ is not obliged to mechanically recite every relevant factor when weighing opinion evidence. *See, e.g., Golfieri v. Barnhart*, No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec. *aff'd* Dec. 29, 2006).

The plaintiff asserts that Dr. de los Heros "states disabling limitations" and that, as the "longtime treating physician with extensive records, . . . he is in the best position to describe work limitations." Statement of Errors at 4. He contends that the "incidences of improvement[,]" "overall waxing and waning of symptoms[,]" and "periodic difficulties with medication" noted by the ALJ were aspects of his impairments and treatment. *Id.* Finally, he argues that the ALJ failed to address consistencies between the Whelan and de los Heros opinions, which he suggests entitled both to greater weight. *Id.*[5] I find no error.

---

[4] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.*, adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.*, whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant or others. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

[5] The plaintiff concludes his argument regarding Dr. de los Heros's opinions by stating, "Accordingly, the Decision violates Social Security C.F.R. § 404.1529, and Social Security Ruling 06-3p." Statement of Errors at 4. In the absence of any explication as to how the ALJ's handling of the de los Heros opinions transgressed those authorities, the point is sufficiently undeveloped as to be waived. *See, e.g., United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

9

First, Dr. de los Heros's status as a treating physician did not in itself oblige the ALJ to accord it greater weight. *See, e.g.*, SSR 96-8p at 149.

Second, the record supports the ALJ's conclusion that Dr. de los Heros's grim prognosis was inconsistent with his treatment notes, which is "a good, and in itself sufficient, reason to reject" his opinion. *Fothergill v. Colvin*, No. 2:15-cv-143-JHR, 2016 WL 183643, at *3 (D. Me. Jan. 13, 2016). The ALJ noted that the plaintiff's 2012 psychiatric records "consistently demonstrated ongoing stability and minimization of his symptoms," with an "excellent" medication response, and that Dr. de los Heros stated in early 2012 that the plaintiff "was euthymic and formally in remission." Record at 32 (citations and internal quotation marks omitted). She acknowledged that psychiatric records from January 2013 to March 2014 revealed "some waxing and waning of psychological symptoms" but noted that "this was in the context of Dr. de los Heros's trying to taper or wean the [plaintiff] off of prescription benzodiazepines and stimulants, which was a difficult transition for [him.]" *Id*. She added that, "despite increased difficulties with his bipolar disorder, anxiety disorder, and personality disorder at times, his psychiatry records still reflect[ed] that the [plaintiff] was generally improving." *Id*.

The plaintiff does not challenge the ALJ's characterization of the treatment records. Rather, his counsel elaborated at oral argument that the evidence on which the ALJ relied to discount the de los Heros opinions, including the plaintiff's activities of daily living, difficulties with medications, and waxing and waning symptoms, was consistent, rather than inconsistent, with his bipolar disorder. Yet, he cited no authority for that proposition. Moreover, as the commissioner points out, *see* Opposition at 7, the ALJ gave great weight to the opinion of Dr. Stahl, who deemed Dr. de los Heros's opinions inconsistent with the plaintiff's activities, *see* Record at 203, 208.

At bottom, the ALJ's characterization of the de los Heros opinions as inconsistent with other evidence of record, most notably his own treatment notes, is supported by substantial evidence. This, together with Dr. de los Heros's failure to specify how the plaintiff had difficulty remembering and carrying out instructions, constituted good reasons to accord his opinions very little weight.

Finally, the fact that there were consistencies between the opinions of Dr. de los Heros and Dr. Whelan did not oblige the ALJ to give either set of opinions greater weight. *See, e.g., Anderson v. Astrue*, No. 1:11-cv-476-DBH, 2012 WL 5256294, at *10 (D. Me. Sept. 27, 2012) (rec. dec., *aff'd* Oct. 23, 2012) (consistency between treating sources' opinions did not entitle them to additional weight when ALJ supportably found them inconsistent with the record as a whole). An ALJ has a duty to resolve conflicts in the evidence, *see, e.g., Boothby v. Berryhill*, No. 2:16-cv-00599-JHR, 2018 WL 1144371, at *5 (D. Me. Mar. 2, 2018), which is precisely what the ALJ did here.

Remand is also unwarranted on the basis of this point of error.

## B. The ALJ's Assessment of the Plaintiff's Credibility

The ALJ provided several reasons for deeming the plaintiff's statements "concerning the intensity, persistence[,] and limiting effects" of his symptoms "not entirely credible[.]" Record at 30-32. These included, insofar as they touched on the mental impairments at issue in this appeal:

1. That the plaintiff had been able to work despite his lifelong difficulties with mental illness, and there was no evidence that his mental impairments had significantly worsened since his alleged onset date of disability. *See id*. at 31-32. Indeed, there was evidence that his symptoms had improved with treatment: his psychiatric records reflected "general improvement overall with medication management[.]" *Id*. at 32.

2. That the plaintiff's "level of functioning in his day-to-day life provides further support for his ongoing ability to engage in substantial gainful activity in accordance with his RFC." *Id.*; *see also id*. at 32-34 (plaintiff cleaned his house regularly, did laundry, prepared meals, spent time with his daughters, dated, attended Alcoholics Anonymous meetings, read, played video games, used the internet, and was developing a new skill set in sewing; record also contained evidence that he had worked as late as November 2013 despite his alleged disability onset date of July 2011).

The plaintiff challenges the ALJ's credibility determination on the bases that it is "tainted by the analytical errors" in her weighing of the Whelan and de los Heros opinions and that the activities described by the ALJ, such as leaving the house seven times a week and playing video games, do not reflect an ability to work full-time. Statement of Errors at 5.

As a threshold matter, as the commissioner contends, *see* Opposition at 8, the plaintiff's challenge to the ALJ's credibility determination founders because he faults only her reliance on his activities of daily living, *see, e.g., Little v. Colvin*, No. 2:13-CV-365-GZS, 2014 WL 5782457, at *8 (D. Me. Nov. 6, 2014) (ALJ's credibility finding "easily survive[d] the applicable, deferential standard of review" when, *inter alia*, claimant did not challenge all reasons given by the ALJ in support of that finding).

In any event, the plaintiff falls short of demonstrating his entitlement to remand on the basis of the two points he raises.

The first point hinges on the success of his separate challenge to the ALJ's handling of the Whelan and de los Heros opinions; however, for the reasons discussed above, that challenge fails.

The second point is also unavailing. The plaintiff argues that there is a "difference between a person's being able to engage in sporadic physical activities and being able to work eight hours

a day five consecutive days of the week." Statement of Errors at 5 (quoting *Ormon v. Astrue*, 497 F. App'x 81, 87 (1st Cir. 2012)). However, *Ormon* stands for the proposition that an ALJ cannot base an RFC determination *solely* on a claimant's activities of daily living, *see Ormon*, 497 F. App'x at 87, and that is not what has happened here. The ALJ based her RFC findings on the medical opinions of Drs. Lester and Stahl and, to a lesser extent, those of Dr. Whelan. *See* Record at 35-36.

In a context such as this, reliance on a claimant's activities of daily living in assessing the credibility of his or her allegations of disabling functional limitations is not error. *See, e.g., Rucker v. Colvin*, No. 2:13-CV-218-DBH, 2014 WL 1870731, at *7 (D. Me. May 8, 2014) ("[W]hile a claimant's activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, an [ALJ] properly may take such activities into consideration in assessing the credibility of a claimant's allegations.") (citations omitted); Social Security Ruling 96-7p ("SSR 96-7p"), reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 137 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").[6]

Accordingly, I find no reason to disturb the ALJ's credibility determination.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

---

[6] As the commissioner observes, *see* Opposition at 9 n.2, SSR 96-7p has been superseded by Social Security Ruling 16-3p ("SSR 16-3p"). However, SSR 16-3p does not apply to the ALJ's February 2016 decision. The ruling took effect on March 16, 2016, and this court has declined to apply it retroactively. *See Coskery v. Berryhill*, No. 1:16-cv-00477-NT, 2017 WL 2417847, at *1-4 (D. Me. June 4, 2017) (rec. dec., *aff'd* July 7, 2017), *appeal docketed*, No. 17-1886 (1st Cir. Sept. 7, 2017).

## NOTICE

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 28th day of March 2018.

<u>/s/ John H. Rich III</u>
John H. Rich III
United States Magistrate Judge
